**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BRADLEY L. LOWE<br><br>*Plaintiff,*<br><br>v.<br><br>DONALD C. WINTER<br>Secretary of the Navy,<br><br>*Defendant.* | ) | Civil Action No. 1:06-cv-01803-ESH |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO CONTINUE SUMMARY JUDGMENT UNDER RULE 56(f)**

Bradley L. Lowe, Lieutenant Colonel, U.S. Marine Corps, Plaintiff, respectfully submits this memorandum of law, to which is attached Plaintiff's Declaration, in reply to Defendant's opposition to Plaintiff's motion under Rule 56(f) of the Federal Rules of Civil Procedure for a continuance of summary judgment pending the completion of discovery. Defendant's opposition misconstrues the standard of review applicable to motions for summary judgment and those applicable to motions for discovery pursuant to Rule 56(f) of the Federal Rules. Plaintiff's motion to continue summary judgment pending completion of discovery should be granted.

**I. Standard of Review under Rule 56(c) of the Fed. R. Civ. P.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317 (1986), quoting Fed. R. Civ. Proc. 56 (c)). "In our view, the plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning a central element of the non-moving party's case necessarily renders all other facts immaterial." (emphasis added.) Id., at 322-323.

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

Once the moving party has met this burden, the non-moving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp., 465 U.S. 574, 587 (1986), quoting Fed. R. Civ. Proc. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Id. at 587 (internal quote omitted).

**II. Legal Standard for Rule 56(f) Motions**

Rule 56(f) motions "should be granted 'almost as a matter of course unless the nonmoving party has not diligently pursued discovery of the evidence.'" Barry v. United States Capitol Guide Board, 2005 U.S. Dist. LEXIS 8381, *14 (D.D.C. May 2, 2005) (quoting Berkeley v. Home Ins. Co., 68 F.3d 1409, 1414 (D.C. Cir. 1995). "Courts have noted that pre-discovery summary judgment motions are premature and should only be used for exceptional

circumstances." Id. at *13. (citation omitted.) Summary judgment should ordinarily be entered only after the plaintiff has been given "adequate time for discovery." Anderson v. Liberty Lobby, 477 U.S. 242, 257 (1986). This is all the more true where the defendant, as here, has exclusive custody and control over the relevant facts and evidence that the plaintiff must access in order to defendant against summary judgment. See, e.g., Ward v. United States, 471 F.2d 667, 670 (3d Cir. 1973). "The purpose of 56(f) is to provide non-movants with a much needed tool to keep open the doors of discovery in order to adequately combat a summary judgment motion." Wichita Falls Officer Assoc. v. Bank One Corp., 978 F.2d 915, 919 (5th Cir. 1992).

## III. Argument

### 1. Defendant Has Provided No Evidence Showing the Absence of a Genuine Issue of Material Fact, and Plaintiff Has Demonstrated the Existence of Material Facts in Genuine Dispute

To establish a *prima facie* Privacy Act cause of action, a plaintiff must prove that the information released was maintained in a system of records, retrievable by a personal identifier, and that the agency improperly disclosed the information. See Henke v. U.S. Department of Commerce, 83 F.3d 1453, 1459-1460 (D.C. Cir. 1996). As Plaintiff noted in his Rule 56(f) motion, Defendant has provided no evidence showing or even tending to show the absence of a genuine issue of material fact as required by Rule 56(c) of the Federal Rules of Civil Procedure. Defendant has produced no reports, memoranda, affidavits, or other forms of admissible evidence. The only materials supplied by Defendant are (1) the Marine Corps Times article and (2) the applicable Secretary of the Navy regulation. Those documents, standing alone, do not demonstrate the absence of material facts in genuine dispute.

**a. FOIA Exemption 6**

Defendant's principal argument in opposition to Plaintiff's Rule 56(f) motion is that Plaintiff cannot establish a *prima facie* case because "Privacy Act protections do not extend to information releasable under the Freedom of Information Act ('FOIA')." Def. Opp. at 2. In support of his position Defendant argues that the information disclosed from Plaintiff's record was "particularly newsworthy," and therefore outweighed Plaintiff's privacy interest. Id. at 3.

In support of his argument Defendant relies on two court decisions addressing those plaintiffs' claims that military departments had disclosed record information to media sources in violation of the Privacy Act. These cases do not support Defendant's contention. They do support Plaintiff's argument that summary judgment would be premature without an opportunity to conduct discovery.

Defendant primarily relies on the non-binding decision of the Eleventh Circuit in Cochran v. United States, 770 F.2d 949 (11th Cir. 1985). Cochran involved allegations that the plaintiff, a Major General in the U.S. Army, misappropriated a government aircraft, and with causing diversion of government facilities and manpower. Id. at 951. At the time of those offenses, the plaintiff served as Commander, Fort Stewart, Georgia. Id. The plaintiff was found guilty of the alleged offenses under a non-judicial proceeding (Article 15, Uniform Code of Military Justice). Id.

After the non-judicial proceeding the Army issued a press release "in response to media inquiries." Id. The press release "briefly summarized the findings of the nonjudicial proceeding and the discipline imposed on appellant, and was apparently provided only to those members of the press who had lodged standing oral inquiries." Id. at 951-52. "The press release was apparently intended, at least in part, to dispel rumors in the community regarding Cochran's

misconduct which were far more egregious than the conduct that had actually occurred." Id. at 952.

According to the court, "[t]he fact that the misappropriation in the present case involved a relatively small amount of money is immaterial to the issue of disclosure: information relating to a misappropriation of government funds, in whatever amount, by a high level government official qualifies as a textbook example of information the FOIA would require to be disclosed to the press. The disclosure of information as to Cochran's military disciplinary proceeding through the July 8th press release did not constitute a 'clearly unwarranted invasion' of appellant's privacy." Id. at 956-957.

The second case relied on by Defendant is Chang v. Department of the Navy, 314 F. Supp. 2d. 35 (D.D.C. 2004). Chang involved a Privacy Act suit alleging that the Navy improperly disclosed personal information to media sources. The allegations stemmed from the Navy's release of information pertaining to Chang's relief from command, non-judicial punishment, and memorandum of reprimand. Id. at 37-38. At the time of the events in question Chang served as the commander of the Navy ship *USS Arthur W. Radford*, which collided at sea with a merchant ship, the *M/V Saudi Riyadh*. Id. at 37.

According to the Court, "[i]t is undisputed that the collision between Commander Chang's ship and the *Saudi Riyadh* merchant vessel was a significant newsworthy event and that plaintiff was the commanding officer of the *Radford*. See Compl. PP 2, 3, 28. The *Radford* incident led to an investigation by the National Transportation Safety Board, two suits in admiralty involving the United States, an internet website providing pictures of the damage and substantial media coverage. See Def.'s Mem. at 13-14 (citing numerous national articles); see id., Ex. P. (news articles). The release of the information about disciplinary actions taken against

Commander Chang therefore was very much in the public interest and complied with Navy regulations allowing for disclosure when the facts leading up to nonjudicial punishment are particularly newsworthy. See *32 C.F.R. § 701.112(b)(2)(viii)(D)*. The Court finds that the public interest in the information outweighs any privacy interests protected under *Exemption 6*." Id. at 44. (emphasis added.)

Cochran and Chang are readily distinguishable from the instant case. There are four reasons why.

First, Plaintiff was not the commanding general of a major military installation as in Cochran, or the commander of a Navy ship, as in Chang. He merely served as the commander of an aircraft squadron, one of approximately 60 in the Marine Corps. He therefore was not a "high level government official" as were the plaintiffs in Cochran and Chang.

Second, Plaintiff was never accused of criminal activity, misconduct, or even negligent performance of duty. See Kassel v. United States Veterans Administration, 709 F. Supp. 1194, 1202 (D.C. N.H. 1989) ("However, essential to the decisions in each of the above-cited cases was the unlawful or unethical behavior which gave rise to the documents released to the public. No similar charges were brought against Jeffrey Kassel.") There is no reason to believe that Marine Corps officials intended the release of Plaintiff's Privacy Act information to deter other public officials from abusing their positions. Id.

Third, Defendant has not contended that the Marine Corps Times or any other private entity had prior knowledge or concerns about Marine Corps aircraft mishaps, or that the Marine Corps' release of information was intended to quell egregious and erroneous rumors that affected the perceptions of Marine Corps officials or civilians, as certainly was the case in Cochran. Indeed, Defendant has provided no evidence to support his contention that the disclosure was

intended to deter other officials from abusing their positions and powers, or that it was made in response to press inquiries or other manifestations of public concern about aircraft mishaps. Nor has Defendant offered evidence that the Marine Corps actually conducted "one of the most intense safety crackdowns in recent history." Def. Opp. at 4.

Fourth, there apparently existed, prior to the disclosure of information, several inquiries from media sources in Cochran, thus indicating that rumors about the general's conduct had spread into non-military forums. Because the vessel accident in Chang obviously took place well before adverse actions were taken against Chang, the same must have been true there. Defendant has not argued that such inquiries existed here, and the record, such as it is, strongly indicates that the Marine Corps initiated contact with the Marine Corps Times, not *vice-versa*. Indeed, it appears that it did so prior to, or simultaneous with, Plaintiff's relief from command.

Three Class C[1] aircraft mishaps occurred under Plaintiff's direct command. See Declaration of Plaintiff. Those mishaps simply did not evoke the level of public interest that did the occurrences in Cochran and Chang. This argument is supported by the fact that the Marine Corps apparently did not send press releases to national media sources and restricted its releases only to the Marine Corps Times which has, comparatively, very limited circulation. Were the aircraft mishaps really of such public interest as to override Plaintiff's privacy interests, the Marine Corps surely would have released the information to national media sources instead of restricting its release, as it apparently did, to the Marine Corps Times.

It also is important to note that Plaintiff has found no other press articles addressing the same subject matter. He also is unaware of any further investigative activity by the Marine Corps

[1] Class C mishaps do not involve personal injury, loss of life, or loss of aircraft. The Marine Corps Times article mistakenly reported that five mishaps occurred under Plaintiff's direct command when only three occurred.

as part of the alleged "safety crackdown," and he is unaware of any other officers who were subjected to adverse actions because of aircraft mishaps occurring under their command. See Declaration of Plaintiff.

Plaintiff thus has raised a genuine issue of material fact in dispute; that being whether or not the public interest outweighed his privacy interests in his Privacy Act information. The questions of fact he posed in his memorandum in support of his rule 56(f) motion are relevant to this issue of disputed fact and can only be ascertained through formal discovery.

The rationale behind rule 56(f) and this Court's favorable posture toward rule 56(f) motions fully supports the granting of Plaintiff's motion for discovery. Here Defendant raised as a central element of his defense the issue of whether the public interest outweighed Plaintiff's privacy interests in the disclosure of the information. This issue encompasses facts that are in the possession of Defendant alone, and which Plaintiff cannot reasonably be expected to ascertain other than through the techniques of formal discovery. The resolution of the issue by this Court cannot be made based on the existing record. See Barry, 2005 U.S. Dist. LEXIS at *23 ("It is simply impossible at this time for the Court to determine whether there is a genuine issue…. Thus, the plaintiff must be afforded the opportunity to engage in discovery so that he may attempt to acquire evidence to rebut the defendant's alleged legitimate and nondiscriminatory reason for his termination.)

If permitted discovery, Plaintiff may reasonably ascertain, *inter alia*, the following facts that are essential to a determination of whether or not the public interest outweighed Plaintiff's privacy interests. (1) Did the Marine Corps receive inquiries from press sources regarding its aircraft safety record? (2) Did the Marine Corps provide a press release to media sources other than the Marine Corps Times? (3) Did the Marine Corps issue the press release in response to

governmental inquires rather than media inquiries? (4) Did the Marine Corps take action against Plaintiff and release that information to the Marine Corps Times because of pressures placed on Plaintiff's superior officers to "address the problem," whether by higher Marine Corps headquarters or civilian government officials? (5) Were any actions taken against other Marine Corps officers who experienced aircraft mishaps as part of the alleged "safety crackdown? (6) Were any official investigations undertaken in regard to the commanding officers of other aviation units as part of the alleged "safety crackdown." These questions, whether considered separately or together, entail material facts that are in genuine dispute.

As Plaintiff stated in his motion to continue summary judgment, Plaintiff is unable to determine from the existing record whether Defendant adhered to the applicable version of SECNAV INST 5720.44B. Nor can he assess whether the "four-step process for evaluating whether information is exempt from disclosure and must be withheld" that is specified in 32 C.F.R. § 701.112(b)(2)(iii) was considered and complied with. See Chang v. Dep't of the Navy, 314 F. Supp. 2d 35, 43 (D.D.C. 2004). The four-step process is that by which the Marine Corps was required to balance the public interest with Plaintiff's privacy rights.

The steps as identified in Chang are: (1) "to determine whether a viable privacy interest exists in the records involving an identifiable living person;" (2) "to consider how disclosure would benefit the general public in light of the content and context of the information in question;" (3) "to determine whether the identified public interests qualify for consideration;" and (4) to balance the personal privacy interests against the qualifying public interest." Defendant has produced no evidence in support of his motion for summary judgment that this mandatory process was followed.

This fact indisputably is material and in genuine dispute. Although Defendant has asserted that the regulations were complied with, Def. S.J. Memo. at 13 ("[f]urthermore defendant followed its own regulations"), he has offered no evidence to support that assertion. Plaintiff obviously cannot determine if the Marine Corps complied or failed to comply with those mandatory provisions without formal discovery. The question of whether it did or did not comply with the regulations is material because a finding of non-compliance would strongly undercut Defendant's assertion that the Marine Corps disclosed the information because it was particularly newsworthy. As noted below, such a finding also would support Plaintiff's allegation that the Marine Corps willfully and intentionally released the information.

**b. Willful and Intentional**

Based on the existing record, and without formal discovery, Plaintiff cannot determine whether the disclosure was willful and intentional. Defendant has produced no evidence in support of his motion for summary judgment or that contradicts Plaintiff's allegation that the disclosure was willful and intentional. This too is a material fact in genuine dispute whose resolution requires formal discovery.

With discovery, Plaintiff may prove that the release of his Privacy Act information was not newsworthy or even intended to inform the public. Moreover, he may prove that the release of information (and the adverse action against him) was arbitrary and calculated simply to show to the Marine Corps leadership that Major General Stalder (and/or others) was "taking appropriate action" to address the issue of aircraft mishaps. In effect, Plaintiff may demonstrate that he was nothing more than the proverbial scapegoat and that the press release was intended simply to assuage concerns of senior Marine Corps leaders or to protect Major General Stalder. This contention is quite reasonable when considered in light of the fact that Major General

Stalder was found to be responsible for one of the aircraft mishaps reported in the Marine Corps Times article. It also is supported by the Marine Corps Times reporting that Major General Stalder called the action a "decapitation strike."

If Plaintiff is able to prove that the release of information was driven by internal Marine Corps politics or to deflect attention away from Major General Stalder and other senior leaders, he also may then prove that the release of information was willful and intentional. On a related note, the disputed material fact of whether or not the Marine Corps complied with the applicable regulations in determining whether the information should be released to the public also is relevant to the willful and intentional criteria. That is so because Defendant's failure to comply with mandatory regulations and procedures would tend to prove that the release was irregular, which would permit the trier of fact to draw the inference that the release was not made with the purposes of FOIA Exemption 6 and the Privacy Act in mind.

**2. Discovery Pursuant to Rule 56(f) Plainly is Warranted**

Defendant contends that Plaintiff has not satisfied the criteria for a continuance of discovery under Rule 56(f) of the Federal Rules of Civil Procedure. Plaintiff counters that Defendant has produced no evidence in support of his motion for summary judgment. If the moving party cannot demonstrate the absence of material facts in genuine dispute, summary judgment is inappropriate, and discovery should be ordered.

Undersigned counsel, Raymond J. Toney, stated by affidavit why discovery pursuant to Rule 56(f) is necessary in this case. The principal reason for the Rule 56(f) motion was that "Defendant has not provided Plaintiff any documents or other sources of information pertaining to this matter apart from Exhibit A and Exhibit B to Defendant's Memorandum of Law." See Affidavit of Raymond J. Toney. Plaintiff has no evidence to respond to in support of his motion

to dismiss not because of any lack of diligence, but because Defendant possesses and controls the facts in this case and has not produced any evidence in support of his arguments. Defendant, the moving party, clearly has not met his burden of proof under Rule 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

Defendant further argues that Plaintiff failed to specify the type and scope discovery required in this matter. Def. Opp. at 6-7. Plaintiff responds that the forms and scope of discovery required are self-evident and that it is obvious that Plaintiff requires each of the discovery forms permitted under Rule 27 of the Federal Rules of Civil Procedure. Plaintiff requires discovery by way of requests for the production of documents, responses to interrogatories, depositions, and requests for admissions. Rule 27 specifies the parameters of discovery which Plaintiff certainly will abide by. Because Defendant possesses and controls the relevant facts and evidence, Plaintiff cannot at this time specify the discovery that he would require to fairly defend against Defendant's motion for summary judgment.

Finally, Plaintiff addresses Defendant's implied assertion that the rule 56(f) motion should be denied for want of due diligence. Defendant argues that Plaintiff has failed to conduct informal discovery in order to defend against summary judgment. It is entirely unreasonable to expect Plaintiff to access the facts and evidence he requires to defend against summary judgment without formal discovery. He cannot subpoena Marine Corps records or the testimony of senior Marine Corps officials. It is exceedingly unlikely that any of the Marine Corps officials involved in this matter, to the very limited extent Plaintiff can identify them, would agree to an affidavit. Indeed, it would appear that once this action was filed, any contact between Plaintiff and the

senior Marine Corps officers involved would be prohibited because of their relationship to Defendant. An inquiry to the Marine Corps Times, which does not control the facts and evidence, undoubtedly would be met with a refusal to reveal any information about the article.

Defendant's approach to this litigation seems highly unusual. He provided no affidavits from the senior Marine Corps officers involved in the release of Plaintiff's Privacy Act information. He provided no documents in support of his motion for summary judgment. Indeed, he provided no evidence whatsoever other than the article itself and the applicable Navy regulation. To expect Plaintiff, through informal discovery, to identify and access the information the Marine Corps has not provided is most unreasonable.

**3. Under the Law of this Circuit, a FOIA Request is Required For the Release of Privacy Act Protected Information**

Defendant assumes in this case that no written FOIA request was required before the Marine Corps could release Plaintiff's Privacy Act information to the Marine Corps Times. His argument is apparently predicated on this Court's decision in Chang, supra, which permitted an exception to the rule requiring a FOIA request established by the D.C. Circuit in Bartel v. F.A.A., 725 F.2d 1403 (D.C. Cir. 1984).

Bartel involved claims that, *inter alia*, the F.A.A. made prohibited nonconsensual disclosures of information about him in violation of the Privacy Act. Id. at 1406. The district court had dismissed each of Bartel's claims in a brief order. Id. at 1407. The D.C. Circuit reversed and remanded the case to the district court. Id. at 1416.

It was undisputed that the F.A.A. had not received a FOIA request before releasing the plaintiff's information to the public. "First and foremost, the letters were not sent in response to a FOIA request." Id. at 1412. The appellees argued that section 552a(b)(2) of the Privacy Act allows "unrestricted disclosure unless the information falls within a FOIA exemption, whether or

not the information has been requested." Id. The court rejected that argument, noting that "[i]t would be unreasonable to read the FOIA, as appellees do, as *increasing agency discretion* to disclose information where disclosure is otherwise prohibited by the Privacy Act. Only when the agency is faced with a FOIA request for information that is not within a FOIA exemption, and therefore has no discretion but to disclose the information, does the FOIA exemption to the Privacy Act come into play." Id. (original emphasis).

In Bartel, the appellees apparently argued that applicable Office of Management and Budget ("OMB") guidelines permit the release of Privacy Act information where that information "is traditionally released by an agency without an FOIA request." Id. at 1413. Without exploring the argument in detail, the court noted, "[t]he OMB Guidelines suggest a possible exception to this interpretation [the requirement of a FOIA request] for information that is traditionally released by an agency to the public without an FOIA request. We need not decide whether such an exception is proper, or if so what its exact scope may be. It is clear that the Vincent letters are not such traditional disseminations." Id.

Chang did not dispose of the requirement of a FOIA request, and obviously had no authority to do so. Rather, Chang permitted an exception to the rule in Bartel ostensibly because it concluded that the OMB Guidelines and Navy regulation struck a proper balance between the public's need to know and protecting the plaintiff's Privacy Act information. Chang, 314 F. Supp. at 42.

The district court in Chang, Plaintiff respectfully submits, went too far. The court relied on the OMB Guidelines and the applicable Navy regulation, both of which pertain only to requests by public members such as the news media. The district court stated as follows: "Specifically, like the OMB Guidelines, the Navy's regulations instruct Navy personnel to

'respond promptly to requests received from news media representatives through public information channels, if the information is releasable under the FOIA [citation omitted].' According to the Navy regulations, 'this eliminates the requirement to invoke FOIA and may result in timely information being made to the public.'" Id. The district court further quoted from Secretary of the Navy Instruction 5720.4A: "'[r]ecords requested through public information channels by news media representatives that would not be withheld if requested under the FOIA should be released upon request.'" Id. As the district court stated, it was undisputed that the Navy had not received a FOIA request.

The OMB Guidelines and Navy regulations clearly refer to requests from news media representatives. Nowhere in the OMB Guidelines or Navy regulations does it state that the Navy may *sua sponte* and without a request or inquiry release Privacy Act information to the news media, as apparently occurred in the instant case. Bartel remains the controlling decision and the OMB Guidelines and Navy regulation provides purporting to create an exception to Bartel are inapplicable here. Crucial as well is the fact that the "firing" of squadron commanders, in this case a Lieutenant Colonel, does not appear to be a matter traditionally released by the Marine Corps to the news media.

**Conclusion**

Based on the foregoing Plaintiff respectfully requests that his motion to continue summary judgment pursuant to rule 56(f) be granted and a scheduling conference for discovery be ordered.

Respectfully submitted,

/s/

Raymond J. Toney (NY0066)
The Law Office of Raymond J. Toney
404 Park Avenue South, 14th Floor
New York, NY 10016
Tel: 212-686-3434, ext. 206
Fax: 718-504-4735

David P. Sheldon (D.C. Bar # 446039)
The Law Offices of David P. Sheldon, PLLC
512 8th Street, S.E.
Washington, DC 20003
Tel: 202-546-9575
Fax: 202-546-0135

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRADLEY L. LOWE<br><br>*Plaintiff,*<br><br>v.<br><br>DONALD C. WINTER<br>Secretary of the Navy)<br><br>*Defendant.* | Civil Action No. 1:06-cv-01803-ESH |

**Declaration of Lieutenant Colonel Bradley L. Lowe**

1. I am Lieutenant Colonel Bradley L. Lowe, United States Marine Corps. I am the plaintiff in the case of Bradley L. Lowe v. Donald C. Winter, 06-CV-01803.

2. I commanded Marine Light Attack Helicopter Squadron 367 from November 20 2003 to October 2, 2004.

3. There were only 3 aircraft mishaps that occurred under my direct command, not five as reported by the Marine Corps Times.

4. The mishaps that happened under my command and that were the subject of the Marine Corps Times article were each "Class C" accidents. Class C accidents do not involve injuries, loss of life, or loss of aircraft.

5. Class C mishaps are commonly referred to in the Marine Corps aviation community as "fender benders." Two of the three mishaps occurred under combat conditions in Iraq while under the control of the Tactical Air Command Center (TACC). The TACC was ironically. commanded by my Reviewing Officer, Major General Keith Stalder. I have no control over these aircraft once they are under the control of the TACC during combat operations. Investigations found no dangerous flying by the pilots involved. The mishaps were found to involve pilot errors that occurred under highly demanding and dangerous circumstances.

6. In my experience as a Marine Corps aviator, I am aware of no other instances in which Class C mishaps have been reported to private media. In my experience they are not considered serious or newsworthy. Class C mishaps are fairly commonplace.

7. Subsequent investigation by the Aviation Mishap Board found Major General Stalder, the officer who relieved me from command and who apparently directed the release of information to the Marine Corps Times, responsible for supervisory failure in the September 2004 mishap reported in the Marine Corps Times.

8. I previously requested under the FOIA all records pertaining to the aircraft mishaps, to include communications between my previous unit, the Aircraft Mishap Board, and the Naval Safety Center. I received no documents in response.

9. It is my understanding that all Class C mishaps are reviewed by the Aircraft Mishap Board. The board then seals the results and delivers them to the Naval Safety Center and there is no public access to those records.

10. I am aware of no Marine Corps aviation-wide investigations involved in the "safety crackdown" reported in the Marine Corps Times. I am aware of no other commanders being relieved from their commands based on Class C mishaps and the"safety crackdown" reported in the Marine Corps Times.

11. I had an office call with Major General Stalder 13 months after my relief. He personally informed me that he might "have made a mistake" by relieving me from my command. He further told me that "someone in MEF [Marine Expeditionary Force] requested a press release. That was the first time I had talked or met with him since approximately 14 September of 2004. The 14 September 2004 meeting was the first time I had ever met with Major General Stalder. He did not personally conduct the relief on 2 October 2004.

12. I practically begged the Marine Corps Times' reporter to allow the matter to remain within the Marine Corps and that he not publish anything about it.

13. Apart from my relief from command and Fitness Report that reflects the relief from command, the Marine Corps conducted no other investigations into my command. I was not subject to reprimand or non-judicial punishment under Article 15 of the Uniform Code of Military Justice. In fact, I was never found to have violated any rules, policies, or standards of conduct and performance.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 15th day of May, 2007.

Bradley L. Lowe
Lieutenant Colonel, U.S. Marine Corps